2009, 51-29. Mr. Sellers, when you are ready. Thank you, Your Honor. May it please the Court. Good morning. Your Honor, we are here because of a fundamental misapplication of the so-called associational test to the facts in this case. The application of the associational test by the trial court was based upon the faulty premise that during the tax years in question, 1998-2000, the radio and internet ministry of the Foundation of Human Understanding was its only ministerial activity, and it applied the associational test to a confined body of essentially electronic communication. There are two faulty premises there. Number one is the fact that the record is clear that during the tax years in question, the Foundation of Human Understanding's ministry activities were not confined to electronic media. Indeed, they did have meetings at the Tall Timber Ranch in Selma, Oregon, and they also had meetings across the country at various locations which were ministered by Foundation ministers. What does the record show about how many meetings there were between 1998 and 2000, and in particular in 1999 and 2000? The record, I don't believe . . . I can't recall the record specifically saying with regard to 1999 and 2000, Your Honor. However, I believe the record is that there were five in Selma and about a dozen more across the country. So there were fewer than 20, I believe, during that three-year period. Twenty-one. Twenty-one. Total of 21. Total of 21 meetings. Five of which occurred in the Tall Timber Ranch? I believe that's correct, Your Honor. In the three-year period? During that three-year calendar year period. The problem is that the government has seized upon a period of time which was particularly difficult for the Foundation because of the illness of its principal minister, Roy Masters. But you'd be free to come back now, for example, and show that there's been much more activity and to reinstate your status as a church, I take it? That is true, Your Honor. Both parties agreed to that fact on questioning from the trial court. Now, the point here is, though, that the government criticizes the sufficiency of that activity on a frequency basis throughout this period. And the problem with the government's tests is this. First of all, the government established these so-called 15 . . . we call them 15-factor tests in an area in which it has no rulemaking authority. Indeed, it did not advance these in the Administrative Procedures Act or Treasury Regulation procedure. It was simply announced at a luncheon conference and then seized upon by the government and advanced in a format in which the courts have uniformly agreed that these are not controlling tests but that they're helpful in certain contexts. There is a 15-factor . . . Is there a problem with the First Amendment? I'm still not quite sure why the IRS has not suggested those 14 elements to be considered in rulemaking capacity and issue it as a Treasury ruling. Is there a difficulty with the First Amendment in the termination of the Church establishment? I don't know that there would be, Your Honor, because the Establishment Clause prohibits the establishment of religion. And the government, I suppose, would be free to do that if it were not a law establishing a religion. In other words, if it were just something that the Church would be free to do, there would be no problem with the First Amendment. I understand that. This is the statutory definition of a church. This is an area that Congress stayed away from. The problem is Congress assiduously refrained from defining the term and granted the Internal Revenue Service no rulemaking authority in this area. There is no delegation of authority to adopt or promulgate a legislative regulation or even an internal regulation. I understand that. But is that a First Amendment restriction, do you think? I believe it is, Your Honor. I believe it is. It would not be an establishment of a church. It would be a definitional aspect of what a church is, right? It would be, Your Honor. It is hypothetical in one respect because the only test that we have and the only case law basis that we have discussing this is a truly Christian-centric sort of a context. And I am trying to think of whether if the government were to establish and define the term church for federal income tax purposes in a context that was not Christian-centric but solely designed to protect the taxing interests of the United States, whether that would violate the First Amendment. That is for the Supreme Court, I guess, to rule upon, right? Perhaps, Your Honor. That is above our pay grade. I beg your pardon? That is above our pay grade. Certainly above mine, Your Honor. The fallacy then is the fact that the government quarrels with the frequency of the in-person ministerial activity during the tax years in question. And the second is a misconstruence of the nature and extent of the Foundation's electronic ministry. The parties agreed at the briefing stage before the trial court that throughout the period in question, the Foundation maintained an interactive telephone ministry. That, in fact, was, during the tax years in question, a part of the electronic ministry. This is not a situation that is comparable to a live television broadcast in the early days of television during the 1950s, as is alleged in the government's brief. This is a situation in which live, real-time participants are free to, and do, and did, call in and actually have conversations with Foundation ministers, seeking advice. All who were present electronically over the radio waves and internet could listen to that advice and could call in themselves. The Foundation's New Insight magazine contains transcripts of some of those important conversations so that others who were not present or not able to attend can review those as well. Your challenging facts, as found by the Court of Federal Claims, Your challenging facts so you've got a clearly erroneous test to overcome. I'm not challenging facts, Your Honor, because in the Court's discussion of, I believe, it was the… The Court says there's no evidence in the record, evidence, to show that the distinguishing characteristics of plaintiff and Foundation 1, as delineated by the tax court, continue to exist. Aren't those fact findings? No longer provides religious services, primary activities or internet, no longer supplemented by the associational activities, worship is only incidental. Those are all fact findings, aren't they? They are, Your Honor, but the facts also reveal that the parties stipulated that the Foundation offered phone-based religious counseling throughout the time period in question, and that fact appears in the trial court's opinion as well. So our point, then, is that the internet and radio communications are, in fact, associational in the context that everyone can come together and can receive and review that advice together. I would point out for the Court a clarification. We have listed a number of statements that pertain exclusively to the declarants' participations in the Foundation's services and their feelings of affiliation with the Foundation during the tax years in issue. We have received hundreds and hundreds of comments, but in preparing our brief, we called out the ones that did not specifically pertain to the tax years in issue. So in looking at those references to the record, those pertain specifically to the tax years in issue, or our statements made after the tax years in issue that say throughout this period, this has been my church, this has been my church for 15 years. It spans that interval of time. So when the Court says that the Court can only look at facts pertaining to those years, these statements that we have articulated in our footnote, even though they are made after the fact, do pertain to those years, and that is evidence in the record, and the Government has offered no contrary evidence. And these are, I take it, predominantly, if not exclusively, people who were dealing electronically, so to speak, with the organization. They were either hearing the broadcasts or dealing on telephone? That is correct, Your Honor, on a numerical basis, but as I said, there were people in physical attendance, and meetings across the country were actually quite large. The meetings in Selma, when the Foundation of Human Understanding moved from Los Angeles to Selma, 2,000 congregants followed it physically to Selma. The meetings then were 350 or so, up until the time when Roy Masters became ill. The 350 was in what time period? Immediately prior, in the late 90s, Your Honor. Do you have any evidence as to how many people attended during the audit period of any of these meetings in Selma? We don't, Your Honor. Attendance records were not maintained, and I think that makes sense when you consider that the only time I have ever signed in as a person around a church is at a wedding or a funeral. No, but certainly somebody could say, you know, we have a range of this many to this many, or we had approximately a third of the place filled, or whatever. You don't have to have a sign-in sheet to get that kind of evidence. That is true, Your Honor, and Roy Masters' affidavit is in the record and speaks to the frequency and continuity of the meetings. I don't know that he gives a population count. The government has discounted that affidavit as self-serving, but it is nonetheless in the record. And one of our problems, of course, is the threshold argument, which is the government establishes the test through a non-rulemaking procedure. The government then has a sliding scale of unarticulated barriers that you must clear in order to clear those hurdles, in order to satisfy that test, and they appear to be arguing that they are the ones that can decide how frequent the meetings have to be, how many people have to be in the hall. I didn't understand Judge Hewitt to have felt that she was beholden to the government's test. In fact, she didn't particularly care for the 17-part test. She really gravitated to the associational test, as I understand her rationale. And so the question is, what is a court prepared to say is a valid reason for the administrative action at issue in this case? And she said the associational test is persuasive and not satisfied here. She did, Your Honor. She also said that the persuasive weight of authority in the case law states clearly that electronic, radio, and internet ministries do not satisfy the associational test. Right. The courts have reached those conclusions, and so did she. But that doesn't sound to me as if that's deference to a group of statements made at luncheon. Your Honor, it's deference in the sense that the court started out by applying those factors and appeared ready to rely on those factors if the court hadn't found that it presented a close question. That's my point. I'm into my reserve time, so I think I'll... But you do agree that the lower court's opinion relies on the associational test more than anything else. I do. It doesn't rely on the 14 points. It does not, Your Honor, although the government's position, as I understand it, is that the trial court erred there and that we actually don't satisfy even more of the 14 points, and that's the reason I addressed it here. Thank you. Mr. Green. Your Honor, Kenneth Green on behalf of the United States. It is undisputed in this case that the Foundation is a publicly supported, tax-exempt religious organization. The only issue is if during 1998 through 2000 it qualified as a church within the meaning of Section 1.1 of the Constitution. In fact, the Church's designation is pertinent principally because if you are a church you are relieved of certain reporting and perhaps auditing processes or at least the agency that the service has to go through more hoops in order to audit you. And second, that contributions made to you are treated differently than they might be to a religious organization. Is that incorrect? Okay, that's the main thing. So the real difference is that it has to do with the reporting and auditing function, correct? Right. There is one further difference and that is... I was pretty sure I missed something. No, no, it's maybe the least of the three. To be a publicly supported foundation, if you are not a church, you have to have a certain amount of public support, a certain level of contribution to you. A church does not have to meet that test. So that would be the only other advantage to being a church vis-à-vis being a 501c3, an exempt religious organization. Is there a difference then between the operating foundation and a public foundation? You're saying that the churches are automatically public foundations. Right. If you qualify as a church, you are considered a public foundation as opposed to a private... A private operating foundation. Right, right. Again, I think it's very important that we're talking about what is a church for the purpose of a tax code and not some general sense. For example, synagogues and mosques are generally not considered churches, but they are for purposes of the tax code. In its reply brief at page 6, the foundation says that it is the belief of the congregants and not the objective attributes of the corporation that characterize a church. The government's view is that this is simply wrong. The beliefs characterize the religion. It is the means by which the religious purpose is accomplished, though, that characterizes whether something is a church for tax purposes. And that is precisely what the associational test, which has been developed by the courts, and what the 14 factors, which the IRS relies on in its audits, focus on. Here is the Court of Federal Claims held. The foundation has changed in a fundamental way since the tax court in Foundation 1 found that it was a church, such that during the years at issue, it is no longer qualifying as a church. The foundation no longer fulfills the associational role, as the Court of Federal Claims held, that courts have set as the threshold requirement that must be satisfied to qualify as a church for tax purposes, and which the tax court in Foundation 1 found so crucial to its decision. As the Court of Federal Claims has held, there are no more regular services, there are no more regular congregations, and there is no more education of the children. The term regular is elusive. Once a week is a typical frequency of meetings, but surely the agency, the service, would not regard that as being the requisite regularity. I suppose once a month would... I don't think that that would be required as the requisite regularity. Certainly 21 times over a period of three years, just as the Court here held, is simply not sufficient. I mean, suppose it's every two months. The idea is that we meet together every two months and we have a day-long session. It's a really big deal, and it's regular, but it just is only occasional, because, after all, it's a commitment of an awful lot of time. Why wouldn't that be sufficient to constitute regular meetings, regular congregant assemblies? Well, of course, now you've said a day-long, and I'm not sure that... I'm trying to get the sense of what... I mean, it's a casually... The aim is toward a community of faith and a fellowship, where the people are coming together to worship. And so there has to be, I think, some regularity and some actual congregation, as opposed to... But you'd agree that my hypothetical would satisfy that requirement, right? Well, I'm not sure. I'm not sure that... And what gives you uncertainty about that? It's regular. It's just not as frequent as maybe you or I might be comfortable with. Well, it's regular in the sense that it's every few months. I'm not sure it's regular in the sense of what the tax code, what Congress was thinking of when they were trying to give churches this special status vis-à-vis a religious organization. I'm not sure that that's... Well, Congress didn't give us a lot of help here. No, Congress didn't give us a lot of help here. We have a one-word definition, which is the definition of the word church is church. Well, that is correct. They didn't. And that was sort of the goal of, I think, the 14 factors with... They call it the 15 factors, because the 15th factor is all the facts and circumstances. In other words, essentially, anything else you can think of that may be relevant. And what the factors are focusing on, and I think it's also what the associational tests focus on, is how the entity operates, how it's bringing together its people, as opposed to a ministry, let's say, that is broadcasting over the TV but doesn't have this goal of bringing a set group of people together, a congregation, so to speak. You... Please go ahead. Well, that's also the problem with these ideas of having a seminar in this city and then a seminar in that city and then a seminar in this city as making up their 21 seminars. Those people are not traveling then to this city, are not traveling then to this city. This is just as any actor who you might see on TV then shows up in your town and you go to see him. There's no real regularity there. What does the record show with respect to these 2,000 folks that moved from Los Angeles to Selma? My guess is that's a pretty significant increase in the population of Selma, Oregon. Is there anything in the record to indicate what the status of that population was? No, I can't confirm or deny that that's in fact in the record. I was simply unaware of that fact. Okay. And one other question. A lot of the focus of the appeal, of course, is on this issue of whether an electronic, for lack of a better term, an electronic-based congregation is acceptable as a substitute for an in-person congregation. Your position, I think it's fair to say, essentially is no with respect to that. Not entirely, actually. Our position is that at least as done by the foundation, the answer is no. Our position is that the fact that you have it in addition to having other associational factors, so if you had a regular congregation... Suppose you have no regular congregation other than the broadcast congregation. You have a service every Sunday morning in which the service is conducted entirely over the broadcast. It's a conventional service, but it is not done with anybody in the broadcasting studio except the officiants. So you're not talking about over the Internet. Let's use broadcasting for starters and we'll move to the Internet. I think no. Then I think you're right. It would probably be the government's position that no, that could not qualify as a church. So if Jim Swaggart has a session in which he has a group of people around him and he's broadcasting to millions of people, but there are a group of people around him in a church-like setting, he's okay, but if you take those people out of the picture, he's not. If he has his regular church, his regular congregation, and he adds to that, he is okay. If all he is doing is sitting there and broadcasting out to the unknown and whoever happens to watch happens to watch at any given time, then no. Now, the Internet, any difference between that? Yes, the Internet could actually be different. The idea is in the Internet you might set up chat rooms. You have things like Skype where you can actually see each other. I'm not saying that it would be necessary to see each other, but what you need is for an interactive congregation. Not that someone calls in, asks a question, nobody else can hear it, or people can hear it, but are not actually able to interact with that person or interact with the minister at the time. With an interactive chat room, everybody can be interacting in real time. Now, if that were to occur, I think it may be possible to have a virtual church, I guess, that would qualify as a church under the Internal Revenue Code. I can understand why we find ourselves in this position, and Judge Hewitt was obviously uncomfortable with being in this position, but thanks to not having had any guidance either from Congress or frankly in an official form at least from the service, we are sort of making it up on the fly, it seems to me. This distinction between a call-in on the one hand and Skype on the other has a distinctly made-up feeling to me. Maybe there is no answer other than the absence of some directive. The agency deciding to issue regulations, maybe we are stuck in doing that, but I can certainly sympathize with Judge Hewitt's discomfort with making these kinds of determinations on a sounds-right-to-me basis. Well, I don't deny it's difficult. I think that's the essence of what we're talking about gets to the essence of the associational tests that have been developed by the courts that focuses on this interactive, this fellowship, community of fellowship. But mostly those cases are at least pre-Internet. They may not be pre-broadcast and they may focus on the distinction between the broadcast and the in-person congregations, but the Internet does sort of change the calculus, it seems to me. In fact, you do agree with one part of it. It changes the calculus to the extent that you could have this interactive sort of congregation, which is, I think, where you start seeing more of a satisfaction of the associational tests that the courts have developed. What about the hierarchical nature of this group? It looks sort of like a family enterprise. Well, we talk about that when we're talking about the 14 factors, and that gets exactly to that. We have Mr. Masters who's on top, and then his family has to be the inheritors of the decision. So we don't think that the court was correct when it said it satisfied that factor. And I guess it's the same thing with the organization. You think that's a finding that's clearly erroneous? Well, we think the court erred, yes. I think the record simply belies that. Does it have to be an interactive congregation? I'm not quite understanding why it has to be interactive. If I have a building here in Washington, and every Wednesday night I have 1,000 people who show up, and they're there for prayers or otherwise, and every week not the same 1,000 people show up, but different 1,000 people show up, do they have to be interactive with each other in order to be designated as a church? There's the opportunity to be. I think there has to be the opportunity to be interactive with each other and with the minister who's conducting the service. So on the Internet, if it's interactive, then that would qualify on that basis? As I suggested, that's very possibly the case. There could be a virtual church on the Internet. Obviously, it would depend upon the specific church. Again, this is sometimes when I was reading the foundation's brief, I sometimes became unclear whether they were talking about religion, church being a religion, or church being a church. Each individual entity, each synagogue, each church, each mosque, has to qualify on its own unless it's as a subordinate under an umbrella. So just because you say, I'm a Catholic, doesn't mean that your entity is in fact a church. Now that leaves me a little unclear. Suppose I have a very small Catholic parish. It's so small that it's pretty much down to my extended family plus the people that run the church who are kind enough to continue operating the parish as long as they're allowed to. That's still a church, right? Because it's part of the Roman Catholic community and it just happens to be an extreme... Now, if that were a separate religion, the religion of Bryson's vision, then I'd have a big problem with being a church, even if the same things occur, right? But once I'm in the Catholic community, I am a church. You wouldn't say that that parish is not a church and that parish is not a church. This one's big enough. That's a church. Right. No, we wouldn't be saying... I thought that's where you were going. No, no, that's not where I'm going. The point I was trying to make was that each individual thing still has to qualify as a church. If they have the attributes of a church, they're a church. For example, the Eighth Circuit and the Lutheran Services case had an organization that was part of the Lutheran umbrella and yet was not a church, it was a services organization. So that's where I was trying to go with that. So each individual entity still must qualify. A Catholic food store is not a church, Robert. Thank you, Mr. Green. I'd certainly be interested in the tenets of the Bryson vision. I'd be interested. Mr. Sellers, you have three minutes. Thank you very much, Your Honor. Your Honors, I think that what we need to focus on here is the articulated purpose and the articulated concern that Judge Tannenwald had in the Chapman case in articulating the associational test in the first place. In the same concurring opinion in which he made reference to the associational test, he also encouraged the adoption of a common sense approach. In the American Guidance Foundation case, the District Court of Columbia talked about the associational test and said that the concern is that the organization be reasonably available to the public in the conduct of its worship. That, according to that court, is the purpose and intent that is addressed by the associational test if, in fact, that test does exist. The government, in its argument, stated that we're not really looking at the congregation or the congregants. We're looking at the organization itself. And yet what will be called upon to evaluate under the associational test is the association of the congregants. So we think it's improper to focus simply upon the church as a corporation itself in applying the associational test. What is the actual activity of the church from the perspective of the congregants? They are the body of the church. They are the ones whose opinions should really matter. That's the reason we solicited the information from the congregants and placed it into the record and placed it into our brief. Our point is not necessarily that the associational test within certain parameters is necessarily, by definition, invalid. Our point is that the trial court erred in stating that the substantial weight of authority, case authority, dictates that the radio and Internet ministry cannot, by definition, satisfy the associational test. We looked at all of the cases cited by the court in its opinion. The first Church of Entheo case was a three-member church, and the primary activities of that were the dissemination of written works. It was essentially a small publisher. No mention of radio, no mention of Internet, and more importantly, no mention of a congregation or any religious services. It's simply factually distinguishable. The American Guidance Foundation case was the type of case that the Internal Revenue Service seeks to attack all the time, which is the standard family church case, because those cases are cases in which tax avoidance seems to supersede the religious purpose. There was a husband, a wife, and their minor children preaching to each other in their home, and the court determined that that was a private religious enterprise. It says nothing about radio, nothing about Internet. It's factually distinguishable. The VIA case was a wellness case in which the organization held seminars concerning physical fitness and health and well-being, and it sold certain dietary supplements. What's more important is that case was decided on 15 factors. It was not decided on the associational test. The spiritual outreach case was a concern of an organization whose activities were that it own an amphitheater at which it would conduct singing festivals that were open and closed by ministers from other churches. It didn't even have a minister. In the Church of Eternal Life case, the two founders were its only members. It operated a library, and it distributed political literature, and it disseminated a newsletter containing political messages. None of that is a persuasive weight of authority in the context of the associational test. Finally, I would respectfully point out that both the Internet and the radio ministry are appointments to listen where the congregant seeks out the church. The broadcast aspects of this are that electronic media is used, but it's not as if we're simply blasting out into the ether and anyone who stands in the way encounters the message. These are people who make an appointment to listen, whether it's on the radio or the Internet. It's an appointed time on an appointed frequency. I don't understand the difference. You're saying an appointment to listen. If I turn on Survivor at 8 o'clock on Thursday or whatever it is, have I made an appointment to listen to Survivor? Do you have a sense that you're using that term? You haven't made an appointment to listen to it, Your Honor, but you have expressed through your conduct an interest in that. I'm not sure what the difference is between blasting Survivor out there and having people, everybody who looks, make an appointment to listen, or some of the people. What's the meaning of that term as you're using it? The distinction is in the conduct of the recipient, one who is interested in receiving it. Presumably, I'm interested in seeing Survivor for some reason. So have I made an appointment? If I'm interested and I don't happen upon it by accident, have I made an appointment to listen in the sense that you're using that term? Yes, Your Honor. You've made it part of your daily routine because it's important to you. It's something you want to receive and something you want to participate in. I thought you were suggesting there was something more that the congregant did besides just click the dial. No, but those... At the appointed time. Those waves that transmit the Survivor show go through our houses every day regardless of whether we want to listen to it or not. Not every day, once a week. Once a week. Thank you, Your Honor. But you do the same thing. Your broadcast goes through my house once a week. That's right. And I just don't... Well, I won't say whether I turned it on or not, but I could and I could decide not to. But the participation of the congregant is not adequately characterized by simply saying they're standing in the way of an electronic beam. They are prioritizing it in their life as something they want to participate in and receive. Thank you so much. Who will be the Survivor in this case? We'll see. The case will be taken under advisement.